

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| SHERYL MOULTON, *individually and on behalf of all other similarly situated individuals*, <br>          Plaintiff, <br><br>vs. <br><br>COLD WAR CITIZENS CARE, LLC, COLD WAR CITIZENS HEALTHCARE OF AMERICA, COLD WAR CITIZENS HEALTH CARE, LLC, OLIN MARTIN, DAVID BABATOPE, and JACOB T. SMITH, <br>          Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 1:25-9891-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

### I.    INTRODUCTION

Plaintiff Sheryl Moulton (Moulton), individually and on behalf of all other similarly situated individuals, filed this putative collective and class action against Defendants Cold War Citizens Care, LLC (CWCC), Cold War Citizens Healthcare of America (CWCHA), Cold War Citizens Health Care, LLC (CWCHC), Olin Martin (Martin), David Babatope (Babatope), and Jacob T. Smith (Smith) (collectively, Defendants).  She alleges violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and the South Carolina Payment of Wages Act (SCPWA), S.C. Code Ann. § 41-10-10 et seq.

Pending before the Court is Defendants' motion to dismiss Moulton's complaint for failure to state a claim. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court the motion will be granted in part and denied in part.

## II.     FACTUAL AND PROCEDURAL HISTORY

CWCC, CWCHA, and CWCHC (collectively, the CWC Defendants) are "doing business in Aiken County in the State of South Carolina as 'Cold War Citizens Council.'" Complaint ¶¶ 4–6. "Smith is the President of the CWC Defendants[,]" *id.* ¶ 20, and "Martin is the Director of the CWC Defendants[,]" *id.* ¶ 21.

The CWC Defendants "run a home health care company that provides home health services under the Department of Labor's [Energy Employees Occupational Illness Compensation Program Act (EEOICPA)] Program." *Id.* ¶ 18. "Under the EEOICPA Program, Department of Energy employees can receive home healthcare services to assist in caring for injuries they suffered in service of nuclear facilities in the United States of America." *Id.* ¶ 19.

Moulton "is a home hea[l]th worker who worked for Defendants beginning in or about 2020 caring for her husband, Mike Moulton, a former nuclear worker who receives home health care services through the EEOICPA Program." *Id.* ¶ 22.

"At all times during the relevant period, Defendants had actual knowledge of all hours [Moulton] and all other [putative class members] worked . . . each shift through Home Health Aide Shift Reports." *Id.* ¶ 25. But, "[a]t no time during the relevant period did Defendants ever pay [Moulton] or any other [putative class member] . . . any wages or any other form of compensation for hours worked for Defendants." *Id.* ¶ 26.

Although "Defendants billed the United States of America at least [one] hundred dollars an hour for the services of its home health workers[,]" *id.* ¶ 36, "Defendants only paid their home health workers between [ten and twelve dollars] an hour and did not pay overtime compensation for hours worked over [forty] hours per week[,]" *id.* ¶ 37. As per Moulton, "Defendants and their management had actual or constructive knowledge that [Moulton] and all other [putative class members] . . . were Defendants' employees and not independent contractors" and were thus entitled to compensation. *Id.* ¶ 38.

Accordingly, as the Court stated above, Moulton brought this putative collective and class action against Defendants. She asserts FLSA and SCPWA claims against the CWC Defendants, and an SCPWA claim against Martin, Babatope, and Smith (collectively, the Individual Defendants).

As the Court previously noted, Defendants filed this motion to dismiss for failure to state a claim. Moulton responded, and Defendants replied. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

### III.    STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss under Rule 12(b)(6), a complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court must "evaluate[] the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). And, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244.

### IV.    DISCUSSION AND ANALYSIS

#### A.    *Whether the complaint is an impermissible shotgun pleading*

Defendants first posit the complaint "contains all of the hallmarks of a shotgun pleading and should be dismissed." Defendants' Motion at 5. They assert "the underlying allegations uniformly (and nonspecifically) state 'Defendants,' without prescribing any specific act or injury to any particular Defendant[,]" and "[Moulton] provides no detail as to how each Defendant may be considered her employer[.]" *Id.*

Moulton, on the other hand, insists "[t]he details of the corporate structure of [the CWC Defendants] and how and why they act together to run Cold War Citizens Council in South Carolina when not registered to do business in South Carolina is a matter for discovery, not pleading." Moulton's Response at 3. Moulton further avers "[t]he Individual Defendants have been specifically described as individuals who permitted the CWC Defendants to mischaracterize [Moulton] and [putative class members] and also are the individuals who designed the CWC Defendants to avoid paying [Moulton] and [putative class members] the wages that they were due under the [SCPWA]." *Id.*

4

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"); Fed. R. Civ. P. 10(b) ("A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Here, Defendants posit the complaint impermissibly "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* The Court, however, is unpersuaded.

The complaint alleges the CWC Defendants are collectively operating under the name Cold War Citizens Council, of which Smith is the President, and Martin is the Director.

Regarding the FLSA claim, the complaint contends Moulton and putative class members "were employees of the CWC Defendants[,]" Complaint ¶ 46; they were "not exempt from receiving the FLSA overtime benefits," *id.*; "[t]he CWC Defendants failed to pay [them] at the rate of one and one-half times their normal rate of pay for all hours worked in excess of forty . . . hours in a workweek" as required by the FLSA, *id.* ¶ 48; and such failure "was knowing, willful, intentional, and done in bad faith[,]" *id.* ¶ 51.

As for the SCPWA claim, the complaint asserts "Defendants are 'employers' as defined by the [SCPWA]," *id.* ¶ 56; they "owe [Moulton] and [putative class members] 'wages' as defined

5

[by the SCPWA] for labor rendered . . . , vacation, holiday, sick leave, and benefits due to an employee," *id.* ¶ 58; and they "have failed to pay [Moulton] and [putative class members] all wages due, as required by [the SCPWA,]" *id.* ¶ 59.

Relative to the Individual Defendants more specifically, the complaint maintains they are all personally liable under the SCPWA for "knowingly permitt[ing] the CWC Defendants to characterize [Moulton] and [putative class members] as independent contractors[,]" *id.* ¶¶ 60–63, and for "design[ing] the CWC Defendants to avoid paying [Moulton] and [putative class members] the wages that they were due[,]" *id.* ¶ 64.

At this stage of the litigation, and in light of the unique business structure Moulton alleges, the Court is unconvinced the complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323; *see, e.g.*, *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (explaining "[t]he fact that defendants are accused collectively does not render the complaint deficient" where it "can be fairly read to aver that all defendants are responsible for the alleged conduct").

The Court will therefore deny Defendants' motion to dismiss on this ground.

### B.  *Whether Moulton has failed to state an SCPWA claim*

As a preliminary matter, Defendants contend the complaint "fail[s] to allege any facts [the Individual Defendants] should be held liable in an individual capacity." Defendants' Motion at 8.

Moulton acknowledges the complaint "d[oes] not state clearly that the three Individual Defendants were each agents or owners of the CWC Defendants[.]" Moulton's Response at 7. But, Moulton posits, the complaint alleges "the Individual Defendants not only knowingly permitted the CWC Defendants to violate the law, [but] they also designed the CWC Defendants

6

to avoid paying [Moulton] and [putative class members] the wages they are due." *Id.* Moulton insists such allegations are sufficient to survive dismissal.

The complaint, as the Court previously noted, alleges "Smith is the President of the CWC Defendants[,]" Complaint ¶ 20, and "Martin is the Director of the CWC Defendants[,]" *id.* ¶ 21. Although the complaint neglects to clarify Babatope's role relative to the CWC Defendants, it consistently references Defendants collectively, without distinguishing between the CWC and Individual Defendants. *See, e.g., id.* ¶¶ 56, 58–59 (maintaining all Defendants are employers for purposes of the SCPWA and have failed to pay Moulton and putative class members the wages to which they are entitled).

The complaint also asserts the Individual Defendants are personally liable for "knowingly permit[ing] the CWC Defendants to characterize [Moulton] and [putative class members] as independent contractors" and for "design[ing] the CWC Defendants to avoid paying [Moulton] and [putative class members] the wages that they were due." *Id.* ¶¶ 60–64.

Based on the foregoing allegations, the Court determines it would be premature at this early stage of the litigation to conclude Moulton is unentitled to relief from the Individual Defendants.

Turning now to the SCPWA claim more generally, Moulton posits it can be divided into three subclaims: (1) unpaid overtime wages; (2) unpaid vacation, holiday, sick leave, and other benefits; and (3) failure to provide proper notice. The Court will address each subclaim in turn.

                 *1.*      ***Whether Moulton has failed to state a claim for unpaid overtime wages***

Defendants maintain "the doctrine of preemption applies to [Moulton]'s SCPWA claim[], which, as pleaded here, merely duplicate[s] her overtime claim[] asserted under the FLSA." Defendants' Motion at 6.

Moulton, however, contends the SCPWA claim is "separate and distinct from [the] FLSA claim because [it seeks] unpaid overtime wage payments that are based upon an agreed-upon hourly rate, pursuant to their fixed hourly rate, which is higher than the federal minimum wage rate." Moulton's Response at 5.

In an earlier opinion, this Court explained:

The Fourth Circuit Court of Appeals has held that "Congress prescribed exclusive remedies in the FLSA for violations of its mandates," and state law claims are "preempted by the FLSA where those claims . . . merely duplicate[] FLSA claims." However, the FLSA provides a floor for minimum wage and overtime and contains a savings clause stating that

> [n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any [f]ederal or [s]tate law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter.

Accordingly, the FLSA does not prevent states from creating a parallel regulatory scheme that provides additional protections for employees. Moreover, claims that are "separate and distinct" from a plaintiff's FLSA claims are not preempted by the FLSA.

Here, the SCPWA both creates a right and a means of enforcing that right that provides additional remedies not available under the FLSA, such as the employee's recovery for three times the amount owed, plus costs and reasonable attorney's fees. Furthermore, Plaintiffs' SCPWA claims are separate and distinct from their FLSA claim because they are seeking unpaid overtime wage payments that are based upon an agreed-upon hourly rate, . . . which is higher than the federal minimum wage rate. . . .

Ultimately, Plaintiffs will be unable to recover twice for the same injury, but they may be entitled to the additional types of relief afforded by the SCPWA. Because the SCPWA is broader than the FLSA in that it is not limited to controversies involving minimum wage and overtime but applies to all wages due, and because Plaintiffs' SCPWA claims are separate and distinct from Plaintiffs' FLSA claims, they are not preempted by the FLSA.

*Xue v. J&B Spartanburg LLC*, No. 7:16-cv-340-MGL, 2016 WL 3017223, at *2 (D.S.C. May 26, 2016) (citations omitted) (quoting *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007)).

Other courts have come to a similar conclusion. *See, e.g.*, *Martinez-Hernandez v. Butterball, LLC*,

8

578 F. Supp. 2d 816, 820 (E.D.N.C. 2008) (applying this analysis to a claim for violation of the North Carolina Wage and Hour Act).

Following this same logic, the Court is unable to hold Moulton's claim for unpaid overtime wages based on a rate of ten to twelve dollars per hour, which is higher than the federal minimum wage, is preempted by the FLSA. So, the Court will deny Defendants' motion relative to this subclaim.

### 2. *Whether Moulton has failed to state a claim for unpaid vacation, holiday, sick leave, and other benefits*

Defendants next aver the factual allegations in the complaint "do not identify any other category of 'wage' (e.g., vacation, holiday, sick leave, or benefits) due or owed to [Moulton] or putative class members." Defendants' Motion at 6 (emphasis omitted). Moulton fails to offer any substantive response in this regard.

The complaint makes a single passing reference to vacation, holiday, sick leave, and other benefits. *See* Complaint ¶ 58 ("Defendants owe [Moulton] and [putative class members] 'wages' as defined in [the SCPWA] to compensate them for . . . vacation, holiday, sick leave, and benefits due to an employee, as required by law."). But, as Defendants aptly note, the complaint neglects to allege any facts in support of this assertion.

Thus, even accepting the well-pleaded allegations in the complaint as true for purposes of this motion, Moulton has failed to state a claim under the SCPWA for unpaid vacation, holiday, sick leave, and other benefits. The Court will therefore grant Defendants' motion to dismiss this subclaim.

### 3.     *Whether Moulton has failed to state a claim for failure to provide proper notice*

Defendants also challenge Moulton's reliance on the notice provision of the SCPWA, S.C. Code Ann. § 41-10-30, arguing "no private right of action exists" under such provision. Defendants' Motion at 7.  Again, Moulton fails to specifically respond.

Defendants are correct Moulton is unable to pursue a private right of action for violation of the SCPWA's notice provision.  *See* S.C. Code Ann. § 41-10-80 (permitting a private right of action exclusively for violations of S.C. Code Ann. §§ 41-10-40 and -50).  Accordingly, the Court will also grant Defendants' motion to dismiss this subclaim.

*****

Inasmuch as the Court will deny Defendants' motion as to the SCPWA subclaim for unpaid overtime wages, it is unnecessary for the Court to address Defendants' request to strike the class allegations from the complaint.  *See* Defendants' Reply at 10 ("Because the only claims asserted on behalf of the proposed Rule 23 class are those asserted under the SCPWA, which are not viable, [Moulton]'s class allegations should be stricken from the [c]omplaint . . . ."); *Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion is granted as to Moulton's SCPWA subclaims for unpaid vacation, holiday, sick leave,

10

and other benefits and failure to provide proper notice, which are both dismissed without prejudice, and denied as to Moulton's SCPWA subclaim for unpaid overtime wages.

The Court will, however, grant Moulton leave to amend her complaint as to the unpaid vacation, holiday, sick leave, and other benefits subclaim. Such amendment shall be filed within seven days after the entry of this Order.

**IT IS SO ORDERED.**

Signed this 5th day of November 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE